# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

IN RE:

DULUTH TRAVEL, INC.,

　　　Debtor.

CHAPTER 11

CASE NO. 18-54894

## MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AUTHORIZING DEBTOR TO HONOR CERTAIN PREPETITION OBLIGATIONS

**NOW COMES** Duluth Travel, Inc. ("**Debtor**"), the debtor and debtor-in-possession in the above-captioned case, and files this Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 363 Authorizing Debtor to Honor Certain Prepetition Obligations ("Motion"), respectfully showing the Court as follows: [1]

## JURISDICTION & VENUE

1.

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1408.

## BACKGROUND

2.

On March 22, 2018, Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code, 11U.S.C. §§ 101 et seq. No Trustee has been appointed and Debtor

---

[1] The relief requested herein is sought at this early stage of the case because relief at this time is necessary to avoid immediate and irreparable harm to the Debtor and its Estate. See Fed. R. Bankr. P. 6003.

continues to operate its business and manage its affairs as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3.

Debtor is a Georgia corporation, with its principal place of business located at 2860 Peachtree Industrial Blvd, Suite 1000, Duluth, GA 30097.

4.

Debtor operates a travel agency which provides services to federal and state government entities/agencies, large corporations, and travel groups.

## The Prepetition Obligations

### *Wage Obligations*

5.

In the ordinary course of Debtor's business, Debtor employs numerous individuals.

6.

As of the Petition Date, Debtor owes its employees approximately $8,900.00 in wages ("**Wage Obligations**"). This amount represents those wages owing from March 21, 2018,[1] through the Petition Date, for all of Debtor's employees. Debtor also owes a fee to ADP, in the approximate amount of $600.00 for the same pay period, plus the most recent pay period which processed on March 21, 2018, such fee being necessary for ADP

---

[1] Funds for the payroll that ended March 20, 2018, were withdrawn from Debtor's account on March 21, 2018. Thus, the amount owed for pre-petition payroll is the amount accrued for one day of the next payroll period, March 21, 2018.

to process Debtor's payroll. Debtor seeks authority to honor these pre-petition obligations.

7.

In addition to the Wage Obligations, as of the Petition Date, Debtor owes taxes and other withholding amounts related to its employees' payroll, including 401k contributions and employer responsibility portions in the approximate amount of $3,488.00 ("**Withholding Obligations**"). This amount represents the Withholding Obligations related to wages owing from March 21, 2018 through the Petition Date for all of Debtor's employees. Debtor seeks authority to honor these pre-petition obligations.

*Insurance Obligations*

8.

In the ordinary course of Debtor's business, Debtor pays insurance related to the operation of its business ("**Insurance Obligations**").

9.

In the ordinary course of Debtor's business, Debtor pays insurance related to the operation of its business for automobile insurance for one automobile. The amount owed to its insurance company, State Farm, under its current insurance policy, is $292.93 is due for March 2018. Debtor seeks authority to honor this pre-petition obligation.

10.

In the ordinary course of Debtor's business, Debtor pays insurance related to the operation of its business for a surety bond. The amount owed to its insurance company,

State Farm, under its current insurance policy, is $860.00 is due for March 2018. Debtor seeks authority to honor this pre-petition obligation.

11.

In the ordinary course of Debtor's business, Debtor pays health, dental, eye and life insurance as benefits to its employees. The amount owed to its insurance companies, Humana, Inc. ("Humana") (health/dental/eye) and Lincoln Financial Group (life) under the current insurance policies, is not more than $67,255.19 and $1,783.26. Debtor recently switched health/dental/eye insurance providers to Humana and the invoices for insurance to date have been incorrect. Debtor has not made payment to Humana while the billing issues are worked out. Therefore, the above referenced amount is for January, February and March, not just a single month. Debtor seeks authority to honor this pre-petition obligation.

### *Government Obligations*

12.

In the ordinary course of Debtor's business, Debtor pays the City of Duluth for a business license on an annual basis ("**Government Obligations**").

13.

The amount owed to the City of Duluth for the 2018 business license is $3,146.72. Debtor seeks authority to honor this pre-petition obligation.

*Critical Vendors*

14.

In the ordinary course of Debtor's business, and as is customary with many businesses in Debtor's industry, Debtor contracts with Airline Reporting Commission ("ARC"), a clearing house, to purchase airline tickets for its customers. Debtor's customers pay Debtor for the purchase of an airline ticket which Debtor, in turn, has purchased or will purchase through ARC. As of the Petition Date, ARC is owed approximately $6,000.00 ("**ARC Pre-Petition Obligation**"). If Debtor cannot pay ARC for the tickets its customers have already purchased, it will lose the trust and confidence of its customers which will have long term negative effects on its business. This would be an unnecessary burden on Debtor and would result in in the loss of business, which Debtor needs to propose a feasible Chapter 11 plan.

15.

In the ordinary course of Debtor's business, and as is customary with many businesses in Debtor's industry, Debtor contracts with an outside company, Concur Technologies, Inc. ("**Concur**"), as a sub-contract for Concur. Debtor books travel for a certain customer via Concur, which after invoicing the customer pays Debtor for the same. Concur invoices Debtor once a month, which includes a significant credit to Debtor because Debtor earns a fee for each transaction it books via Concur. This credit ultimately results in an income stream to Debtor once the client makes payment to Concur. As of the petition date, Concur is owed $23,327.42 for the time period January 29, 2018, through February 25, 2018, which is due by April 16, 2018, as well as Debtor

estimates that an additional $25,000.00 is owed to Concur for the time period February 26, 2018 through the Petition Date, which will be due in mid-May, totaling approximately $50,000.00 ("**Concur Pre-Petition Obligation**"). If the Concur Pre-Petition Obligation is not paid, Debtor will not be able to fulfill the bookings it made for its client and it will lose the client's business. This would be an unnecessary burden on Debtor and would result in the loss of business, which Debtor needs to propose a feasible Chapter 11 plan.

16.

In the ordinary course of Debtor's business, and as is customary with many businesses in Debtor's industry, Debtor contracts with an outside company to provide after hours answering service/customer service for its customers. Computerized Corporate Rate Association ("**CCRA**") provides such services to Debtor. As of the petition date, CTRA is owed approximately $4,000.00 ("**CCRA Pre-Petition Obligation**") for pre-petition services. If the CCRA Pre-Petition Obligation is not paid, CCRA may be required to locate a new after hours answering service/customer service company. This would inefficient and cause unnecessary disruption to Debtor's business, as the new service provider would need to become familiarized with Debtor's current systems which may cost more than CCRA and cause a disruption to Debtor's business operations and customer relationships. Maintaining the service provider for this service is the most efficient means of managing Debtor's after hours customer service.

17.

In the ordinary course of Debtor's business, and as is customary with many businesses in Debtor's industry, Debtor contracts with an outside company to track and collect commissions owed to it. Commission Tracking Service ("**CTS**") provides such services to Debtor. As of the petition date, CTRA is owed approximately $527 ("**CTS Pre-Petition Obligation**," collectively with the ARC Pre-Petition Obligation, the Concur Obligation, and the CCRA Obligation, the "**Critical Vendor Obligations**") for pre-petition services. If the CCRA Pre-Petition Obligation is not paid, Debtor may be required to locate a new after hours answering service/customer service company. This would inefficient and cause unnecessary disruption to Debtor's business, as the new service provider would need to become familiarized with Debtor's current systems which may cost more than CCRA and cause a disruption to Debtor's business operations and customer relationships. Maintaining the service provider for this service is the most efficient means of managing Debtor's after hours customer service.

18.

Debtor believes that honoring its pre-petition Wage Obligations, Withholding Obligations, Insurance Obligations, Government Obligations and the Critical Vendor Obligations (collectively, "**Pre-Petition Obligations**"), is the best way to maintain good relations with its employees and its customers, minimize the negative impact that this bankruptcy case may have upon its employees and its customers, who are essential to Debtor's continued operation and successful reorganization, and maintain insurance

related to a Debtor's business and assets, as required by the Office of the United States Trustee.

### Argument & Citation of Authority

Section 507(a)(4) and (a)(5) of the Bankruptcy Code provides priority for the pre-petition Wage Obligations, the Withholding Obligations, and the employee related portion of the Insurance Obligations. See 11 U.S.C. § 507(a)(4) and (a)(5). Thus, employees with claims falling under this subsection will be entitled to receive full payment prior to payment of Debtor's general unsecured creditors, as none of the obligations exceed $12,475.00 on an individual basis.

Additionally, pursuant to § 105(a) and the "necessity of payment" doctrine, satisfaction of the Pre-Petition Obligations is authorized. Bankruptcy courts have permitted postpetition payment of prepetition obligations that are necessary to preserve or enhance the value of the debtor's estate for the benefit of all creditors. See e.g., In re Frontier Airlines Holdings, Inc., Case No. 08-11298 (Bankr. S.D.N.Y. April 14, 2008); In re Pike Nursery Holding L.L.C., Case No. 07-79129 (Bankr. N.D. Ga., November 16, 2008) (Massey, J.); In re Wolf Camera, Case No. 01-83470 (Bankr. N.D. Ga., June 22, 2001) (Mullins, J.) (authorizing debtor to honor gift certificates and coupons). In this case, Debtor's creditors will not be prejudiced by the proposed satisfaction of these Pre-Petition Obligations but instead will be benefitted by the uninterrupted continuation of Debtor's business operations, by continued positive employee and customer relations, and by the continued insurance coverage provided by the insurance policies discussed above.

Further, to the extent the requested transactions are considered to be outside the ordinary course of business, Debtor seeks authority pursuant to 11 U.S.C. §§ 363(b) and 105(a) to honor these Pre-Petition Obligations.

Debtor's hopes for a successful chapter 11 reorganization depend on employee and customer retention and loyalty, positive employee relations, Debtor's positive reputation, and future business. Debtor believes that any interruption in or resistance to the payment of the Pre-Petition Obligations would significantly and detrimentally impact Debtor's business. Denial of the request may cause a significant disruption in its customer service, which would result in a loss of future business, as well as significant employee turnover and a corresponding loss of enterprise knowledge, which will hamper Debtor's ability to reorganize, and may cause a violation of guidelines established by the Office of the United States Trustee.

**WHEREFORE**, Debtor respectfully requests that the Court enter an order:

(a) authorizing Debtor to honor and satisfy in full the Pre-Petition Obligations;

(b) finding that this Motion has been served on the Internal Revenue Service, the Georgia Department of Revenue, the Office of the United States Trustee, Gwinnett Community Bank, Small Business Association, and the twenty (20) largest unsecured creditors, and that in light of the relief requested, no further notice is necessary; and

(c) granting such other relief and further relief as may be just and proper.

Respectfully submitted, this 22nd day of March, 2018.

                                     **ANNA M. HUMNICKY**
                                     **ATTORNEY AT LAW**
                                     Proposed Counsel to Debtor

                              By:   /s/ Anna M. Humnicky
                                     Anna M. Humnicky
                                     Georgia Bar No. 377850

3350 Riverwood Parkway
Suite 1600
Atlanta, GA 30339
(P) (770) 858-1288
(F) (770) 858-1277
ahumnicky@cpmas.com